USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOUSSA KOUYATE, *individually and on behalf of all others similarly situated*,

Plaintiff,

-v-

THE HARVARD DRUG GROUP LLC *d/b/a* RUGBY LABORATORIES,

Defendant.

1:24-cv-6223-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

The Harvard Drug Group LLC ("Defendant") manufactures and sells over-the-counter acne products containing benzoyl peroxide. Moussa Kouyate ("Plaintiff") purchased one of Defendant's products and later had it tested. According to Plaintiff, the product contained significantly elevated levels of benzene, a carcinogen. Plaintiff alleges that the product was therefore dangerous to health, misbranded, and illegal to sell.

Plaintiff previously asserted claims arising from the presence of benzene in the product. The Court dismissed those claims because Plaintiff's claims premised on the omission of a benzene warning from the product's label were preempted and because he had not adequately pleaded a non-preempted claim based on an affirmative misrepresentation or manufacturing defect. The Court granted Plaintiff limited leave to amend to cure those deficiencies. The first amended complaint ("FAC") asserts claims under Section 349 of the New York General Business Law, strict liability based on a manufacturing defect, common law negligence, and unjust enrichment.

Defendant moves to dismiss the FAC. Because Plaintiff does not plausibly allege materially misleading conduct under Section 349, and because his negligence and strict liability claims seek only economic loss, Defendant's motion to dismiss is GRANTED.

# I. BACKGROUND[1]

## A. Plaintiff Discovers Benzene in Defendant's Product

Defendant The Harvard Drug Group LLC is a Michigan limited liability company that manufactures, markets, distributes, and sells acne medication products. FAC ¶¶ 31, 34. Defendant sells its products under the brand name Rugby Laboratories. *Id.* ¶¶ 1, 31. One of Defendant's products is its Rugby Laboratories Benzoyl Peroxide Wash USP 10% (the "BPO Product" or the "Product"). *Id.* ¶ 1. Benzoyl peroxide is an active ingredient in the BPO Product. *Id.* ¶ 35.

Plaintiff Moussa Kouyate is a resident and citizen of the Bronx in New York City. *Id.* ¶ 29. In approximately 2024, Plaintiff purchased the BPO Product from a pharmacy in the Bronx for approximately $15. *Id.* The Product's expiration date was April 2025. *Id.* The Product recommends that it be used "one to three times daily." *Id.* ¶ 60. Plaintiff alleges that he used the Product as directed and stored it "at room temperature," as indicated in the labeling. *Id.* ¶¶ 22–23.

After purchasing the Product, Plaintiff submitted it to an independent laboratory for testing. *Id.* ¶ 29. The laboratory tested the Product on June 5, 2024, before its expiration date, and found that it contained 434.64 parts per million ("ppm") of benzene. *Id.* Plaintiff alleges that the Product is "dangerous to health" when used as directed because it contains "significantly elevated levels of benzene." *Id.* ¶ 14.

## B. The Health Risks of Benzene and the FDA's Related Regulations

According to the National Cancer Institute, "[e]xposure to benzene increases the risk of developing leukemia and other blood disorders." *Id.* ¶ 41. The U.S. Food and Drug Administration (the "FDA") also recognizes that "[b]enzene is a carcinogen that can cause cancer in humans."

[1] The facts are taken from Plaintiff's first amended complaint, Dkt. No. 52 ("FAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Dkt. No. 52 is captioned the "Second Amended Class Action Complaint," it is the first amended pleading filed in this action and is referred to here as the FAC.

*Id.* ¶ 44. The FAC relies on two FDA evaluations involving other topical products to support its allegation that the amount of benzene detected in the BPO Product is dangerous. In 2018, the FDA evaluated two over-the-counter ("OTC") topical pain relievers containing between 8 and 60 ppm of benzene and concluded that it is "possible" that repeated exposure could increase cancer risk. *Id.* ¶ 45. In 2021, the FDA evaluated aerosol sunscreen products containing between 11.2 and 23.6 ppm of benzene and concluded that serious adverse effects, including potential for "life-threatening" issues or "permanent impairment of a body function," were "likely to occur." *Id.* ¶ 46. Plaintiff alleges that the 434.64 ppm detected in the BPO Product "vastly exceeds" those levels. *Id.* ¶ 47.

The FDA regulates OTC acne products through a set of regulations known as the acne monograph (the "Acne Monograph"). *Id.* ¶¶ 3–4, 17–20. Under those regulations, an acne drug containing benzoyl peroxide is "generally recognized as safe and effective and is not misbranded if it meets each of the conditions" in the applicable monograph and "each general condition established in § 330.1" for OTC drugs. *Id.* ¶ 3 (quoting 21 C.F.R. § 333.301). The FDA permits benzoyl peroxide to be used in OTC acne products in concentrations of 2.5 to 10 percent. *Id.* ¶ 4.

The FAC also cites a March 11, 2025 FDA notice reporting voluntary recalls of a limited number of benzoyl peroxide acne products after testing identified "elevated levels of benzene." *Id.* ¶ 9 n.2. At the same time, the FAC expressly disclaims any challenge to the FDA's approval of benzoyl peroxide, any claim that implicates the BPO Product's labeling, and any theory that all acne products containing benzoyl peroxide are unsafe or systematically degrade into benzene under normal conditions. *Id.* ¶¶ 4–7. Plaintiff instead alleges that Defendant's particular BPO Product contained significantly elevated levels of benzene. *Id.* ¶ 14.

**C. Plaintiff's Claims Against Defendant**

Plaintiff asserts four claims against Defendant: a violation of Section 349 of the New York

General Business Law, N.Y. Gen. Bus. Law § 349 ("Section 349"); strict liability based on a manufacturing defect; common law negligence; and unjust enrichment. FAC ¶¶ 74–121. The FAC alleges that the BPO Product is "dangerous to health" when used as directed and therefore misbranded under New York Education Law Section 6815(2)(i). *Id.* ¶ 14. New York Education Law Section 6811(9) prohibits the manufacture or sale of a misbranded drug. *Id.* ¶ 13.

For his Section 349 claim, Plaintiff alleges that Defendant "deceptively represent[ed] that its BPO Product is safe to use as directed and not misbranded" when the Product was "in fact" "dangerous to health when used as directed and thus misbranded." *Id.* ¶ 77. Plaintiff identifies Defendant's act of "selling its misbranded BPO Product" as the "deceptive or materially misleading act or practice that was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* ¶ 81. He also alleges that consumers could not reasonably know that the Product was dangerous because "Defendant alone possessed that information" and the Product was not "amenable to being tested for benzene contamination prior to purchase." *Id.* Plaintiff alleges that, as a result, he and the putative class "suffered economic losses" in that they purchased a product they otherwise would not have purchased. *Id.* ¶ 82.

Plaintiff's strict liability claim alleges that the BPO Product was "contaminated" with significantly elevated levels of benzene that rendered it "unreasonably dangerous for use by foreseeable customers" and faults Defendant for failing to properly manufacture the Product, ensure that it conformed to the Acne Monograph, and test it for benzene. *Id.* ¶¶ 85, 89.

His negligence claim alleges that Defendant owed a common law duty to exercise due care in manufacturing the Product and that federal regulations required Defendant to test its products to ensure that they met "specifications for identity, purity, strength, and quality"—a requirement he alleges parallels New York's common law duty to inspect and test products for safety. *Id.* ¶¶ 97–100. Plaintiff alleges that Defendant "negligently failed to test" the BPO Product for benzene even

though it "knew or should have known that acne products containing benzoyl peroxide were subject to benzene contamination." *Id.* ¶ 102. He further alleges that, had Defendant tested the Product, it would have been required to reject the lot because of the elevated benzene levels. *Id.* ¶ 104.

Plaintiff pleads unjust enrichment in the alternative to his Section 349 claim. *Id.* ¶ 113. He alleges that Defendant benefited financially from selling the BPO Product at the expense of consumers who would not have purchased it had they known that it was dangerous to health when used as directed. *Id.* ¶¶ 114–15. He attributes that benefit to the same alleged deceptive representation that underlies his Section 349 claim. *Id.* ¶ 117.

The injuries alleged in the FAC are solely economic. Plaintiff alleges that he "suffered economic injury when he spent money to purchase a BPO Product he would not otherwise have purchased." *Id.* ¶ 30. The negligence count likewise alleges "economic injuries" and "economic losses." *Id.* ¶¶ 108–09. And the proposed class expressly excludes "individuals who allege personal bodily injury resulting from the use of the BPO Products." *Id.* ¶ 66.

**D. Procedural History**

Plaintiff commenced this putative class action lawsuit on August 16, 2024, asserting claims for false advertising under Section 350 of the New York General Business Law, common law fraud, and negligence *per se* based on Defendant's alleged violation of Sections 6811(9)–(11) of the New York Education Law. Dkt. No. 1 ¶¶ 103–41. Defendant moved to dismiss the complaint on January 17, 2025. Dkt. No. 37.

On September 26, 2025, the Court granted Defendant's motion to dismiss. Dkt. No. 51 ("MTD I"). The Court held that Plaintiff's Section 350 and fraud claims based on the lack of benzene warnings were expressly preempted by the Federal Food, Drug, and Cosmetic Act (the "FDCA") because federal law did not require those warnings. *Id.* at 23–24. The Court separately dismissed Plaintiff's non-preempted Section 350 theory because the complaint did not identify any

affirmative misrepresentation on the Product's label. *Id.* at 32. The fraud claim likewise failed for lack of a material misrepresentation. *Id.* at 37–38. And Plaintiff did not plead facts giving rise to a strong inference of fraudulent intent or the circumstances of the alleged fraud with the particularity required by Rule 9(b). *Id.*

The Court also dismissed as preempted Plaintiff's negligence *per se* theory that the BPO Product was adulterated or misbranded because benzoyl peroxide degraded to form more than 2 ppm of benzene. *Id.* at 28–29. The Court separately considered Plaintiff's contention that Defendant violated the FDA's current good manufacturing practices ("cGMPs"). It concluded that Plaintiff's allegations of cGMP violations were "wholly conclusory." *Id.* at 30. And it explained that testing a product off the shelf after sale did not support an inference that Defendant had violated the cGMPs during manufacture. *Id.* at 31.

After dismissing all of Plaintiff's claims, the Court granted Plaintiff leave to file an amended complaint. *Id.* at 38–39. The Court described the scope of the permission granted as follows:

> Plaintiff fails to adequately allege facts sufficient to plausibly plead a non-preempted claim for a violation of Section 350, fraud, and negligence *per se* based on any affirmative misrepresentations contained on the label of the BPO Product, or based on the sale of an adulterated or misbranded product as a result of any manufacturing defect. The Court cannot conclude that further amendment would not cure these deficiencies. The Court therefore grants Plaintiff leave to file a second amended complaint *solely to cure the deficiencies identified with respect to these claims* . . . .

*Id.* at 39 (emphasis added).

Plaintiff filed the FAC on October 27, 2025. FAC. Defendant moved to dismiss the FAC on December 15, 2025. Dkt. No. 57; Dkt. No. 58 ("Mem."). Plaintiff opposed the motion on January 12, 2026. Dkt. No. 59 ("Opp'n"). Defendant replied on January 26, 2026. Dkt. No. 60 ("Reply"). The parties also submitted notices of supplemental authority in support of their positions on March 19, March 23, July 10, August 3, August 24, and September 29, 2026. Dkt. Nos. 64–65, 68, 70, 72, 74–75.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)).

"To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001). Failure to adequately allege "an essential element" of a claim is grounds for dismissal under Rule 12(b)(6). *Schneider v. Pearson Educ., Inc.*, No. 12 Civ. 6392, 2013 WL 1386968, at *5 n.6 (S.D.N.Y. Apr. 5, 2013) (internal quotation marks and citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Additionally, Defendant argues that Plaintiff's claims are preempted. Mem. at 15–21; Reply at 4–8. "[P]reemption is 'an affirmative defense.'" *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 236 (2d Cir. 2021) (citing *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015)). "An affirmative defense is defined as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*,

316 F.3d 337, 350 (2d Cir. 2003). "[A]n affirmative defense is traditionally one that a defendant would have the burden not only of pleading but also of proving." *Walker v. Schult*, 45 F.4th 598, 616 (2d Cir. 2022). "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) (quoting *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)). The Court need not reach preemption, however, because Plaintiff fails to adequately plead any of his claims.

## III. DISCUSSION

### A. Plaintiff Exceeded the Scope of the Leave to Amend

As an initial matter, Plaintiff's FAC exceeded the limited leave to amend granted in the Court's prior opinion. "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases). Here, the Court granted Plaintiff leave to amend his Section 350, fraud, and negligence *per se* claims "*solely* to cure the deficiencies identified with respect to *these claims*." MTD I at 39 (emphasis added).

For the non-preempted Section 350 claim, Plaintiff failed to "plausibly plead the existence of any misrepresentation" by Defendant. *Id.* at 34. For the non-preempted fraud claim, Plaintiff failed to plead a material misrepresentation with the particularity required by Rule 9(b) and "sufficient facts to give rise to a strong inference of fraudulent intent." *Id.* at 36–38. As to negligence *per se*, the Court dismissed as preempted Plaintiff's theory that the BPO Product was adulterated or misbranded because its benzoyl peroxide degraded to form more than 2 ppm of benzene. *Id.* at 28–29. But the Court afforded Plaintiff an opportunity to allege facts supporting a manufacturing defect that caused the BPO Product to be adulterated or misbranded, rather than relying on

conclusory allegations of cGMP violations. *Id.* at 30–31, 39. Leave to amend was limited to curing those deficiencies; it was not an unrestricted invitation to assert additional causes of action.

The FAC instead asserts claims under Section 349 and for strict liability based on a manufacturing defect, common law negligence, and unjust enrichment. FAC ¶¶ 74–121. The negligence and strict liability counts overlap with the manufacturing defect theory contemplated in the Court's first opinion. But even assuming those counts could be construed as efforts to cure the deficiencies in Plaintiff's negligence *per se* claim, the Section 349 and unjust enrichment claims exceed the leave granted.

Plaintiff pleads unjust enrichment as an alternative remedy and does not connect that new cause of action to any deficiency the Court authorized him to cure. And Plaintiff's explanation for substituting Section 349 for Section 350 rests on a misreading of the Court's prior opinion. Plaintiff contends that the Court's prior opinion left him "seemingly precluded under the law of the case from alleging any set of facts under Section 350's false advertising provision based on *labeling*." Opp'n at 3. The Court, however, did not foreclose every Section 350 claim involving the Product's label. The Court distinguished preempted claims seeking additional disclosures from non-preempted claims based on affirmative misrepresentations, then dismissed the latter because Plaintiff had not identified any such misrepresentation. MTD I at 32, 34–36. The opinion thus identified the missing allegation, contrary to Plaintiff's assertion that it "did not specify how any of the deficiencies identified could be cured." Opp'n at 2.

Plaintiff also conflates permission to add new facts with permission to add new claims. He argues that the Court did not bar him from pleading newly available information and that the March 2025 FDA alert "shed light on the availability of additional claims not previously pled." *Id.* at 3. But the Court granted leave for a specific purpose: to cure the deficiencies identified in the claims before it. Plaintiff could add new facts in an effort to cure those deficiencies. He could not use

those facts to add new causes of action. If Plaintiff believed the FDA alert justified additional claims, he could have sought broader leave to amend. He did not, and the alert did not expand the leave the Court had granted.

Moreover, Plaintiff's account of the chronology is incorrect. He asserts that, "[u]nlike the state of facts upon which this Court's previous order was issued," the FDA had "now" concluded that certain products containing benzoyl peroxide should be recalled. *Id.* at 5. However, Defendant submitted the March 11, 2025 alert as supplemental authority on May 2, 2025, months before the Court issued its first opinion, Dkt. No. 46, so the alert was already before the Court when it granted limited leave to amend. The Court nevertheless declines to dismiss the new claims for exceeding the scope of the leave granted, a procedural dismissal that would be without prejudice. Each claim must be dismissed for the independent reasons discussed below.

### B. Plaintiff Does Not Plausibly State a Claim for a Violation of Section 349 Based on an Implied Representation or Material Omission

Plaintiff fails to state a Section 349 claim because he does not plausibly allege that Defendant engaged in materially misleading conduct. Section 349 prohibits "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," while Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law §§ 349, 350. To successfully assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). "Claims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

"To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). The test applies an objective standard. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)). "Given that the reasonable consumer inquiry is, in most instances, a factual one, a party seeking to dismiss a [GBL] claim must 'extinguish . . . the possibility' that a reasonable consumer could be misled." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 236 (S.D.N.Y. 2021) (quoting *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 278 (E.D.N.Y. 2021)).

Read together, the FAC and Plaintiff's opposition appear to advance two theories of misleading conduct: one based on an implied representation arising from Defendant's mere sale of the BPO Product and another based on Defendant's alleged omission of material information about the Product. For the reasons described below, Plaintiff fails to plausibly plead a Section 349 claim based on either theory.

**1. Plaintiff's Implied Representation Theory Fails Because Illegality Alone Is Not Deceptive Under Section 349**

Plaintiff's implied representation theory fails because it treats the allegedly unlawful sale of the BPO Product itself as a deceptive representation that the Product was lawful and safe to use. Plaintiff alleges that Defendant "deceptively represent[ed]" the Product to be "safe to use as directed and not misbranded," when in fact it was allegedly dangerous to health when used as directed and therefore misbranded and illegal to sell. FAC ¶¶ 77–79. He identifies Defendant's act of "selling its misbranded BPO Product" as the "deceptive or materially misleading act or practice." *Id.* ¶ 81. Plaintiff's opposition makes the theory explicit: "In selling products in New York, a merchant impliedly represents that its products are legal and safe to use as directed, and if they are not, the

merchant has engaged in a deceptive practice." Opp'n at 23. But Plaintiff has not identified New York authority establishing that proposition,[2] and the New York Court of Appeals has rejected Section 349 claims based on similar reasoning.

In *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166 (2013), the Court of Appeals rejected an argument that "by inserting an unlawful provision in the contract," the defendant "impliedly represented that this provision was valid and thereby engaged in a deceptive act or practice," describing it as "too attenuated to be plausible." *Id.* at 172. The court explained that "Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers" and "cannot fairly be understood to mean that everyone who acts unlawfully, and does not admit the transgression, is being 'deceptive.'" *Id.* Such a rule would "stretch the statute beyond its natural bounds to cover virtually all misconduct by businesses that deal with consumers." *Id.* at 172–73 (noting that "[i]f the legislature had intended this result, it would not have enacted a statute limited to '[d]eceptive acts or practices' in the first place"). By contrast, conduct prohibited by another statute may also be actionable under Section 349 when it "may tend, in itself, to deceive consumers," independent of its illegality. *See id.* at 173 (contrasting mere inclusion of allegedly unlawful termination provision with seller's disclosure of gift card fees

---

[2] Plaintiff cites *City of New York v. Smart Apartments LLC*, 959 N.Y.S.2d 890, 893 (Sup. Ct. 2013), and *Cousins v. Instrument Flyers, Inc.*, 396 N.Y.S.2d 655, 659 (1st Dep't 1977) (Capozzoli, J., dissenting) ("Our courts have determined that a manufacturer by marketing and advertising his products impliedly represents that it is safe for its intended use." (internal quotation marks omitted)), *aff'd*, 44 N.Y.2d 698 (1978). Opp'n at 23–24. Neither establishes the proposition for which Plaintiff cites it. *Smart Apartments* is a New York Supreme Court decision, and "[i]n the absence of a ruling by the Court of Appeals, a federal district court is not bound by the opinions issued by New York State's lower courts." *Williams v. J.P. Morgan & Co.*, 199 F. Supp. 2d 189, 191 (S.D.N.Y. 2002). More importantly, the court did not derive its statement that "courts and commissions have held that a merchant impliedly represents that its products and services are legal and safe, and if they are not, the merchant has engaged in a deceptive practice" from New York law. *See Smart Apartments*, 959 N.Y.S.2d at 893 (citations omitted). It relied on decisions of the Maryland Court of Appeals and the Seventh Circuit and on Federal Trade Commission authority. *Id.* And the case concerned the New York City Consumer Protection Law, not Section 349. Plaintiff's reliance on *Cousins* is more troubling. The sentence that Plaintiff quotes comes from Justice Capozzoli's dissent, which quotes an opinion of the Supreme Court of Pennsylvania describing Pennsylvania products liability law. *See Cousins*, 396 N.Y.S.2d at 659 (quoting *McCown v. Int'l Harvester Co.*, 342 A.2d 381, 382 (Pa. 1975)). Thus, the dissent's statement that "[o]ur courts have determined that a manufacturer by marketing and advertising his products impliedly represents that it is safe for its intended use" refers to Pennsylvania courts, not New York courts. *Id.* Plaintiff's representation of that as a statement of New York law is at best misleading.

and other restrictions in small print).

The Court of Appeals applied the same principle in *Collazo v. Netherland Property Assets LLC*, 35 N.Y.3d 987 (2020), where it distinguished a "misrepresentation to the public that an apartment was exempt from rent regulation" from an allegation that the defendants merely "failed to admit that they violated the Rent Stabilization Law." *Id.* at 990–91. The latter did not allege "affirmative conduct that would tend to deceive consumers" and thus failed to support a Section 349 claim. *Id.* at 991.

Plaintiff alleges no deception independent of the Product's alleged illegality. He reasons that because the Product was allegedly misbranded and illegal to sell, Defendant's act of selling it necessarily conveyed that it was lawful and safe.[3] But the fact that conduct allegedly violates another law does not, without more, make the conduct deceptive under Section 349.[4] Nor does Plaintiff allege the kind of independently misleading conduct identified in *Schlessinger* and *Collazo*. He points only to Defendant's sale of the allegedly misbranded Product. His implied representation theory therefore fails.

### 2. Plaintiff's Omission Liability Theory Fails Because He Does Not Plausibly Allege That Defendant Possessed the Omitted Information

Plaintiff's omission theory fails because the FAC does not plausibly allege that Defendant knew its BPO Product contained elevated levels of benzene when it sold the Product. For GBL

[3] Plaintiff's characterization of Defendant's argument illustrates the problem with his theory. Plaintiff asserts that Defendant "appears to be arguing that manufacturing and selling misbranded and dangerous BPO Products to unsuspecting consumers is not deceptive conduct under GBL § 349." Opp'n at 23. But that framing assumes that allegedly unlawful conduct is necessarily deceptive, which is the premise that the Court of Appeals rejected in *Schlessinger*.

[4] The provision Plaintiff alleges Defendant violated, N.Y. Educ. Law § 6811(9), prohibits the sale of a misbranded drug, but the misbranding theory he invokes does not itself depend on deception. Plaintiff relies on Section 6815(2)(i), which treats a drug as misbranded if it is "dangerous to health when used" as directed. A separate subsection covers drugs whose labeling is "false or misleading in any particular." *Id.* § 6815(2)(a). *Cf. Food Parade, Inc. v. Off. of Consumer Affs. of Cnty. of Nassau*, 7 N.Y.3d 568, 572 (2006) (distinguishing, in construing Nassau County's deceptive trade practices law, between General Business Law § 820's prohibition on sale of expired OTC drugs, which "does not characterize the practice as deceptive" but "simply bans such sales," and its separate prohibition on concealment or alteration of expiration dates). Thus, Plaintiff's theory identifies no aspect of the conduct prohibited by Section 6811(9) that is deceptive independent of the alleged violation itself.

claims premised on omission liability, "the standard for whether an omission is materially misleading under Section 349 is the same as the standard for misrepresentations: actionable omissions are 'limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 579 (S.D.N.Y. 2025) (quoting *Oswego*, 85 N.Y.2d at 26). "[A]n omission-based claim must plausibly allege that the plaintiff[] could not reasonably have obtained the [omitted] information." *Id.* at 580 (internal quotation marks omitted) (quoting *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-cv, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (summary order) (quoting *Oswego*, 85 N.Y.2d at 26–27)). "One example—though not the only example—of how to meet that standard is if the defendant 'alone possesses [the omitted] information.'"[5] *Id.* (quoting *Oswego*, 85 N.Y.2d at 26–27).

At the outset, Plaintiff concedes that he has not asserted an actionable omission. "A party may be deemed to concede an argument by failing to address it in an opposition brief." *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022). Defendant expressly argues that the FAC "alleges no facts detailing *how* or *why* THDG would have uniquely known about the potential for elevated levels of benzene in its BPO Products and instead acknowledges that '[t]he potential danger of benzene contamination in acne products containing benzoyl peroxide was not only scientifically discoverable during the class period, it was "*commonly known* among scientists" at the time of the Acne Monograph's approval.'" Mem. at 23. Plaintiff's opposition does not respond to Defendant's argument that the FAC fails to plead an actionable omission. Instead, Plaintiff relies on his implied representation theory and argues that whether a reasonable consumer would be

[5] "New York state courts do not appear to have adopted the narrow rule" articulated in *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83 (2d Cir. 2013) (summary order), an unpublished and nonprecedential Second Circuit decision, suggesting that omission-based claims are appropriate *only where* the business alone possesses material information and fails to disclose that information. *Schuman*, 788 F. Supp. 3d at 580. The Court still "agrees that the best reading of *Oswego Laborers* is that 'an omission-based claim for § 349 liability' must plausibly allege that the plaintiff 'could not "reasonably have obtained the relevant information they now claim the defendant failed to provide."'" *Id.* at 581 (quoting *Paradowski*, 2023 WL 3829559, at *2 (quoting *Oswego*, 85 N.Y.2d at 26)).

misled presents a question of fact. Opp'n at 23–24. He therefore concedes Defendant's argument as to the deficiency of his omission theory. *See, e.g.*, *Brunero v. Vukasinovic*, No. 23-CV-6341, 2024 WL 4345731, at *7 (S.D.N.Y. Sept. 30, 2024) ("Generally, a party's failure to respond to an argument effectively concedes that argument.").

Even absent that concession, Plaintiff's omission theory fails because the FAC does not plausibly allege that Defendant knew the BPO Product contained elevated levels of benzene when it sold the Product. Plaintiff alleges that consumers could not know that the BPO Product was dangerous because "Defendant alone possessed that information." FAC ¶ 81. But the FAC does not plead facts supporting that assertion. It alleges that Defendant knew or should have known that BPO products were susceptible to benzene contamination and the chemical process associated with that risk and thus a factfinder could infer that Defendant knew of its obligation to test for benzene. *Id.* ¶ 48. Those allegations may support an inference that Defendant knew of a risk that its BPO Product could contain benzene but do not support an inference that Defendant knew that the Product actually contained elevated levels of benzene.

The FAC's testing allegations also undermine an inference that Defendant knew the Product contained elevated levels of benzene. Plaintiff alleges that Defendant "negligently failed to test" its BPO Product for benzene and that, had Defendant tested the Product, it would have discovered the elevated benzene and rejected the lot. *Id.* ¶¶ 102, 104. Those allegations support, at most, an inference that Defendant should have known of the contamination. The FAC does not explain how Defendant actually knew of contamination it allegedly failed to test for. The conclusory allegation that "Defendant alone possessed that information" is insufficient.

Courts finding that a plaintiff plausibly pleaded a manufacturer's knowledge have relied on facts showing that the manufacturer had learned of the particular defect. For example, general information about the risk posed by gas igniters, including reports, patents, and a prior recall, did

not establish knowledge that the particular oven at issue had a defective igniter. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 125–26 (E.D.N.Y. 2011). But allegations that an authorized repairman had addressed numerous similar complaints with respect to the particular oven and had been instructed not to identify the igniter as the cause of the malfunction supported an inference of such knowledge. *See id.* at 126, 129. Similarly, allegations of regulatory and consumer complaints, repair invoices, warranty claims, and technical service bulletins issued by the manufacturer supported an inference that the manufacturer knew of the alleged defect. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 562 (S.D.N.Y. 2016). The FAC alleges no comparable facts supporting an inference that Defendant in fact knew the BPO Product contained elevated levels of benzene. Accordingly, Plaintiff has not plausibly alleged an actionable omission under Section 349.

**C. The Economic Loss Rule Bars Plaintiff's Negligence and Strict Liability Claims**

Plaintiff's negligence and strict liability claims are barred by New York's economic loss rule. "Under the 'economic loss rule,' New York's product liability law excludes claims for pure economic loss." *Yousefzadeh v. Johnson & Johnson Consumer Inc.*, 184 F.4th 130, 154 (2d Cir. 2026) (collecting cases). The rule "stands for the proposition that an end-purchaser of a product is limited to contract remedies and may not seek damages in tort for economic loss against a manufacturer." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290 (2023) (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 288 n.1 (2001)). The rule applies to both negligence and strict products liability claims. *See Bocre Leasing Corp. v. Gen. Motors Corp.*, 84 N.Y.2d 685, 692 (1995); *Cnty. of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62–63 (2d Cir. 1984). "[T]ort recovery is allowed for personal injuries and damage to 'other property.'" *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 205 (E.D.N.Y. 2010).

Here, the FAC alleges only economic injury from Plaintiff's purchase of the BPO Product. He alleges that he "suffered economic injury when he spent money to purchase a BPO Product he

would not otherwise have purchased." FAC ¶ 30. The proposed class expressly excludes "individuals who allege personal bodily injury resulting from the use of the BPO Products." *Id.* ¶ 66. And the negligence and strict liability counts characterize the alleged harm as "economic losses" or "economic injuries." *Id.* ¶¶ 85, 108. Because Plaintiff alleges neither personal injury nor damage to other property, his negligence and strict liability claims are barred by the economic loss rule.

Plaintiff's arguments to the contrary conflate the economic loss rule with distinct principles of tort law. First, Plaintiff argues that his negligence claim survives because Defendant owed an "independent state law duty to exercise reasonable care in manufacturing its BPO Products." Opp'n at 24–25. But the New York Court of Appeals has specifically cautioned against conflating the economic loss rule with "the prohibition against duplicative contract and tort claims." *See IKB Int'l*, 40 N.Y.3d at 290. The latter asks whether a tort claim rests on "a legal duty independent of the contract itself," while the economic loss rule asks whether a purchaser may recover in tort from a product manufacturer for purely economic loss. *See id.* at 290–91. Thus, even assuming Defendant owed Plaintiff a duty of reasonable care independent of any contractual obligation, that does not permit Plaintiff to recover purely economic losses through a products liability tort claim.

Plaintiff also argues that application of the economic loss rule is premature because courts consider "the nature of the defect, the injury, the manner in which the injury occurred, and the damages sought" to determine whether the rule applies. Opp'n at 25 (quoting *Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357, 365 (W.D.N.Y. 2013)). But the cases Plaintiff cites illustrate that factual development may be necessary when the pleadings leave uncertain whether the plaintiff seeks recovery for damage to other property, *id.*; they do not suggest that such development is required

when the alleged injury is plainly economic.[6] The FAC identifies Plaintiff's injury as the money he spent purchasing the BPO Product, alleges no damage to other property, and expressly excludes persons alleging bodily injury from the proposed class. No factual development is necessary to determine that Plaintiff seeks only economic loss.

**D. Plaintiff's Unjust Enrichment Claim is Dismissed as Duplicative**

Plaintiff's unjust enrichment claim is dismissed as duplicative of his Section 349 claim. Unjust enrichment "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* at 790–91. "Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (2d Dep't 2008)). Consistent with that rule, "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Barton*, 535 F. Supp. 3d at 249 (collecting cases). An unjust enrichment claim "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473–74 (S.D.N.Y. 2020) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

Plaintiff's unjust enrichment and Section 349 claims are duplicative because they arise from the same alleged conduct and seek recovery for the same economic injury. Plaintiff expressly pleads unjust enrichment "in the alternative to his claims under Section 349." FAC ¶ 113. His Section 349 claim alleges that Defendant "deceptively represent[ed] that its BPO Product is safe to use as

---

[6] In *Praxair, Inc. v. General Insulation Co.*, the allegedly defective product physically damaged preexisting piping and vessels, and the court held it was premature to apply the economic loss rule where the pleadings left unresolved whether that damage was to "other property" or to a single integrated product. *See* 611 F. Supp. 2d 318, 326–28 (W.D.N.Y. 2009). *Bristol Village* applied the economic loss rule at the pleading stage, concluding that water damage caused by defective exterior trim was economic loss because the trim had failed to perform its intended function as part of the building's protective exterior. *See* 916 F. Supp. 2d at 365–66.

directed and not misbranded when in fact the Product is dangerous to health when used as directed and thus misbranded." *Id.* ¶ 77. Plaintiff alleges that, "[a]s a direct result of Defendant's deceptive and misleading conduct," he and the putative class "suffered economic losses in that they purchased a BPO Product they would not otherwise have purchased." *Id.* ¶ 82.

The unjust enrichment claim repackages the same theory. Defendant allegedly "benefited financially from its sale of the BPO Product," and that benefit came at Plaintiff's expense because he "purchased a Product [he] would not have purchased" had he known that it was "dangerous to [his] health when used as directed." *Id.* ¶¶ 114–15. The alleged reason that Defendant's retention of that benefit is unjust is the same alleged deceptive conduct underlying the Section 349 claim: Defendant "enticed Plaintiff and putative Class members to purchase its BPO Products by deceptively representing that its BPO Products are safe to use as directed and not misbranded" and "unjustly profited from its deceptive business practice." *Id.* ¶¶ 117–18. The unjust enrichment claim therefore "relies on the same factual allegations and the same theory of liability" as the Section 349 claim and is duplicative. *See Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021).

Plaintiff's arguments to the contrary are unpersuasive. He first argues that "the elements for an unjust enrichment claim are distinct from the elements for GBL § 349 claims, thus supporting the inference that his unjust enrichment claim is not duplicative of his consumer protective claim." Opp'n at 25–26; *see also* FAC ¶ 111. But the element-by-element approach applied in *Warner v. StarKist Co.*, No. 18-CV-406, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019), which Plaintiff cites for that proposition, is "inconsistent with the rule, articulated by the Second Circuit in *NetJets*," because that rule "focuses *on facts* and *damages*, but says nothing about a comparison of elements." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 117 (S.D.N.Y. 2021); *see also Nachman v. Tesla, Inc.*, No. 22-CV-5976, 2023 WL 6385772, at *4–6 (E.D.N.Y. Sept. 30, 2023) (rejecting *Warner*'s element-by-

element approach), *aff'd on other grounds*, No. 24-2362, 2025 WL 1201996 (2d Cir. Apr. 25, 2025) (summary order); *Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 228–29 (N.D.N.Y. 2024) (same), *aff'd on other grounds*, No. 24-919-CV, 2025 WL 65668 (2d Cir. Jan. 10, 2025) (summary order). The relevant inquiry is not whether the two causes of action contain identical elements, but whether the claims as pleaded arise from distinct facts and allege distinct damages. They do not.[7]

Plaintiff separately argues that unjust enrichment remains available as an alternative remedy because he may lack an adequate remedy at law under Section 349. Opp'n at 26 ("[A]n award of statutory damages under GBL § 349(h) may be seen as representing equitable relief, meaning Plaintiff may otherwise lack an adequate legal remedy"); *see also* FAC ¶ 112 ("Moreover, an award of statutory damages under General Business Law § 349(h) may be seen as representing equable [sic] relief, as there is disagreement 'whether an award of statutory damages is legal or equitable in nature.'" (quoting *Kurz v. Chase Manhattan Bank*, 273 F. Supp. 2d 474, 480 n.1 (S.D.N.Y. 2003))).

But *Kurz*, which Plaintiff cites for that proposition, did not hold that statutory damages under Section 349 are equitable. Rather, in considering whether statutory damages under the Truth in Lending Act carried a right to a jury trial, the court observed that "[c]laims for actual damages clearly fall into the realm of legal relief." 273 F. Supp. 2d at 480 n.1. Section 349 expressly provides such a legal remedy by authorizing recovery of "actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. Law § 349(h). Accordingly, Plaintiff's unjust enrichment claim is dismissed as duplicative.

## IV. LEAVE TO AMEND

The Court does not grant Plaintiff further leave to amend his Section 349 claim. Although

---

[7] Nor does Plaintiff's decision to plead unjust enrichment "in the alternative" save the claim. FAC ¶ 113. An unjust enrichment claim is "not validly pleaded in the alternative" where it merely "repackag[es] the same allegations" supporting another cause of action, and a plaintiff must instead identify a basis on which he could "succeed on [his] unjust enrichment claim and fail on [his] other claims." *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 735 F. Supp. 3d 352, 401–02 (S.D.N.Y. 2024). Plaintiff identifies none. His unjust enrichment claim depends on precisely the same alleged deception, purchase, and economic loss as his Section 349 claim.

the Court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[w]hen a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment [even if] the proposed second amended complaint in fact cures the defects of the first.'" *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)). "Simply put, 'a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.'" *Id.* at 257–58 (quoting *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)).

Plaintiff had notice before filing the FAC of the central defect in his non-preempted Section 350 claim—the failure to allege any misrepresentation by Defendant. MTD I at 34. The Court explained in its prior opinion that "[t]he standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to [General Business Law § 349]." *Id.* at 32 n.25 (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)).

The Court nevertheless granted Plaintiff leave to amend because he had "not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court," and permitted amendment "solely to cure the deficiencies identified with respect to these claims." *Id.* at 39.

Plaintiff did not cure that deficiency. Instead, he substituted his Section 350 claim with a Section 349 claim and noted that Sections 349 and 350 are "both aimed at weeding out deceptive conduct, and both have identical standards for recovery." Opp'n at 3. Despite having the benefit of the Court's prior ruling, Plaintiff again identifies no representation by Defendant that the Product was safe to use as directed or was not misbranded. He instead advances the implied representation theory rejected above—that Defendant made such a representation simply by selling the Product. FAC ¶¶ 77–81; Opp'n at 23–24. Plaintiff is not entitled to another opportunity to recast the same consumer deception theory. *See Nat'l Credit Union Admin.*, 898 F.3d at 257–58.

The Court does not grant Plaintiff further leave to amend to replead an omission theory.

Defendant expressly argued that the FAC "alleges no facts detailing *how* or *why* THDG would have uniquely known about the potential for elevated levels of benzene" in its Product. Mem. at 23. Plaintiff did not respond to that deficiency, identify additional facts that he could plead to establish Defendant's knowledge, or request leave to amend. Where a plaintiff has had notice of a pleading deficiency and an opportunity to amend but "failed to address the shortcomings" and has not "identified allegations that would . . . remedy" them, denial of further leave to amend is within the district court's discretion. *See United States ex rel. Gallian v. AmerisourceBergen Corp.*, No. 25-2950, 2026 WL 2539817, at *11 (2d Cir. Aug. 28, 2026). Accordingly, Plaintiff's Section 349 claim is dismissed with prejudice.

The Court also declines to grant Plaintiff leave to amend his unjust enrichment claim. Dismissal of the Section 349 claim without leave to amend does not make the same theory viable as unjust enrichment. Unjust enrichment "is not a catchall cause of action to be used when others fail" and is unavailable where it "simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 18 N.Y.3d at 790–91. Thus, where an unjust enrichment claim rests on the same allegations as a plaintiff's conventional claims, "if [the] other claims are defective, an unjust enrichment claim cannot remedy the defects." *See In re Chantix*, 735 F. Supp. 3d at 402 (quoting *Del Rosario v. Sazerac Co.*, No. 23-CV-1060, 2023 WL 6318083, at *3 (S.D.N.Y. Sept. 28, 2023)). Because further amendment would not cure that defect, Plaintiff's unjust enrichment claim is dismissed with prejudice.

The Court dismisses Plaintiff's negligence and strict liability claims without prejudice to the limited amendment described below. The sole purpose of that amendment is to cure the economic loss rule defect described above. Specifically, Plaintiff may amend those claims only to allege, if he can do so consistent with Rule 11, that he suffered personal bodily injury or damage to other property as a result of Defendant's conduct. The Court does not grant leave to add new causes of

action, new theories of liability, or new categories of damages unrelated to those two exceptions to the economic loss rule. Nor does the Court grant Plaintiff license to otherwise revise or expand the operative complaint beyond changes necessary to plead such injury and to conform the existing negligence and strict liability claims to those allegations. Any amended complaint must remain within those bounds.

The FAC defines the proposed class to exclude "individuals who allege personal bodily injury resulting from the use of the BPO Products." FAC ¶ 66. If Plaintiff amends the complaint to allege that he himself suffered such an injury, the existing class definition would therefore exclude the named Plaintiff. Any amended complaint pursuing that theory must revise the class allegations as necessary to eliminate that inconsistency. That permission is itself limited to conforming the class allegations to the amendment authorized here.

Finally, the Court's decision to permit this limited amendment should not be understood to resolve issues that the Court has not reached. Because Plaintiff's negligence and strict liability claims fail as pleaded under the economic loss rule, the Court has not decided whether those claims are expressly or impliedly preempted by the FDCA. Defendant has raised both forms of preemption as grounds for dismissal. Nor has the Court determined whether, apart from the economic loss rule, Plaintiff has adequately pleaded the elements of negligence or strict liability under New York law. If Plaintiff files an amended complaint within the limited scope permitted above, the Court will address those questions on the basis of the amended pleading and any renewed motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's Section 349 and unjust enrichment claims are dismissed with prejudice. Plaintiff's negligence and strict liability claims are dismissed without prejudice to the limited amendment authorized above. Plaintiff may file an amended complaint within 30 days of the date of this order solely within the scope of the

leave granted above. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 57, 74, 75.

SO ORDERED.

Dated: September 30, 2026
New York, New York

GREGORY H. WOODS
United States District Judge